IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA
LINCOLN DIVISION

| | |
|---|---|
| SARAH JOHNSON, | ) |
| Plaintiff, | ) CASE NO: |
| v. | ) |
| MCDONALD'S CORPORATION, a Delaware corporation; ESSIG & ASSOCIATES, INC. d/b/a ESSIG FAMILY MCDONALD'S, a Missouri Corporation; | ) JURY TRIAL DEMAND |
| Defendants, | ) |

**PLAINTIFF'S COMPLAINT FOR DAMAGES**

COMES NOW the plaintiff, SARAH JOHNSON, by and through her attorneys of record, THE AUSMAN LAW FIRM PC, LLO and MARLER CLARK INC., PS (*pro hac vice* pending), and alleges as follows:

## I.    PARTIES

1.    The plaintiff is a thirty-eight-year-old married woman who resides in Eagle, Cass County, Nebraska.

2.    Defendant McDonald's Corporation, (hereinafter "McDonald's" or "Defendant") is a foreign corporation incorporated under the laws of Delaware and headquartered in Chicago, Illinois at 110 N. Carpenter St. Chicago, IL 60607. At all times relevant hereto, the defendant franchised and exercised operational control over the McDonald's restaurant located at 13821 Guildford St, Waverly, NE 68462.

3.  Defendant Essig & Associates, Inc. d/b/a Essig Family McDonald's (hereinafter "Essig" or "Defendant") is a corporation incorporated under the laws of the State of Missouri and headquartered with a principal office listed with the Missouri Secretary of State of 916 S State Route 291, Liberty, MO, 64068 and registered agent Jerome E. Brant located at Two South Main, Liberty, MO 64068. At all times relevant hereto, Essig was the franchisee operating the McDonald's restaurant located at 13821 Guildford St, Waverly, NE 68462.

## II. JURISDICTION AND VENUE

4.  This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a) because the matter in controversy far exceeds $75,000.00, exclusive of costs; because the matter is between a citizen of Nebraska, the Plaintiff, and two defendant foreign corporations; and because the Defendants have certain minimum contacts with the State of Nebraska such that maintenance of the suit in this district does not offend traditional notions of fair play and substantial justice. Both McDonald's and Essig maintain such business contacts in Nebraska by operation of McDonald's restaurants, to which the case at bar is directly related, such that maintenance of this suit is proper.

5.  Venue in the United States District Court for the District of Nebraska is proper pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims and causes of action occurred in this judicial district, and because the Defendants are subject to personal jurisdiction in this judicial district at the time of the commencement of the action.

### III. GENERAL ALLEGATIONS

**_E. coli O157:H7 Infection and Hemolytic Uremic Syndrome_**

6. *Escherichia coli* are the name of a common family of bacteria, most members of which do not cause human disease. *E. coli* O157:H7 is a specific member of this family that can cause bloody diarrhea (hemorrhagic colitis) in humans. In the years since *E. coli* O157:H7 was first identified as a cause of diarrhea, this bacterium has established a reputation as a significant public health hazard.

7. *E. coli* O157:H7 lives in the intestines of cattle and other ruminants. *E. coli* O157:H7 is also notable among pathogenic bacteria for its extremely low infectious dose—that is, the number of bacteria necessary to induce infection in a person. While for most pathogenic bacteria, it takes literally millions of bacterial colonies to cause illness, it is now known that fewer than 50 *E. coli* O157:H7 bacteria can cause illness in a child. The practical import is that even a microscopic amount of exposure can trigger a devastating infection.

8. The most severe cases of *E. coli* O157:H7 infection occur in young children and in the elderly, presumably because the immune systems in those age populations are the most vulnerable. After a susceptible individual ingests *E. coli* O157:H7, the bacteria attach to the inside surface of the large intestine and initiate an inflammatory reaction in the intestine, which ultimately results in the painful, bloody diarrhea and abdominal cramps characteristic of the intestinal illness.

9. The mean incubation period (time from ingestion to the onset of symptoms) of *E. coli* O157:H7 is estimated to be two to four days (range from 1-21 days). Typically, a patient with an acute *E. coli* O157:H7 infection presents with abdominal cramps, bloody

diarrhea, and vomiting. The duration of diarrhea in children with *E. coli* O157:H7 infections is significantly longer than that of adults.

10. *E. coli* O157:H7 can produce a wide spectrum of diseases from mild, non-bloody diarrhea to severe, bloody diarrhea accompanied by excruciating abdominal pain to life-threatening complications. In most infected individuals, the intestinal illness lasts about a week and resolves without any long-term effects. Antibiotics do not appear to aid in combating these infections, and recent medical studies suggest that antibiotics are contraindicated for their risk of provoking more serious complications. Apart from good supportive care, which should include close attention to hydration and nutrition, there is no specific therapy.

11. About 10% of individuals with *E. coli* O157:H7 infections (mostly young children) go on to develop hemolytic uremic syndrome (HUS), a severe, potentially life-threatening complication. The essence of the syndrome is described by its three central features: the destruction of red blood cells, the destruction of platelets (those blood cells responsible for clotting), and acute renal failure due to the formation of micro-thrombi that occlude microscopic blood vessels that make up the filtering units within the kidneys.

12. There is no known therapy to halt the progression of HUS. The active stage of the disease usually lasts one to two weeks, during which a variety of complications are possible. HUS is a frightening illness that, even in the best American medical facilities, has a mortality rate of about 5%. Most HUS patients require transfusion of blood products and develop complications common to the critically ill.

**The Outbreak**

13. As of October 24, 2024, 75 individuals were identified as confirmed cases of *E. coli* O157:H7 among 10 including Nebraska. The outbreak is ongoing.

14. According to the CDC, all interviewed individuals purchased and consumed food from McDonalds restaurants, and most reported having eaten a Quarter-Pounder hamburger.

15. According to a statement by McDonald's an initial investigation indicates that slivered onions from a single supplier may be the source of the outbreak.

16. McDonald's has removed the slivered onions and beef patties used in the Quarter-Pounder from stores in the affected states.

**The Plaintiff's *E. coli* O157:H7 Infection and Illness**

17. Plaintiff visited the McDonald's restaurant located at 13821 Guildford St, Waverly, NE 68462 on September 28, 2024.

18. She purchased and consumed a Quarter-Pounder without modification.

19. Plaintiff began to suffer symptoms consistent with *E. coli* O157:H7 on or about October 3, 2024, including stomach pain and diarrhea.

20. By Sunday October 6, Plaintiff's illness had worsened such that she went to the emergency department at CHI Health St. Elizabeth Hospital. There she was evaluated for severe dehydration, abdominal pain, and diarrhea, which evaluation included blood and stool samples. Plaintiff was treated for her symptoms and sent home with medication and instructions to follow up with a GI specialist.

COMPLAINT FOR PERSONAL INJURIES
and JURY DEMAND - 5

21. On October 8, 2024, Plaintiff's stool sample returned a positive result for *E. coli* O157:H7, and she was contacted by her local health department as a case in the McDonald's outbreak.

22. Plaintiff continued to suffer significant pain and other physical effects of her illness until after October 20, 2024.

23. Plaintiff was again contacted by her health department on October 21, 2024.

### IV.   WARRANTY AND PRODUCTS LIABILITY CLAIM AGAINST DEFENDANTS

24. Plaintiff incorporates paragraphs 1 through 23 of this Complaint as if each paragraph was set forth herein in its entirety.

25. At all times relevant hereto, the Defendants were the manufacturers, suppliers, packagers, distributors, and/or sellers of the adulterated food product that is the subject of this action. Because the product was contaminated with *E. coli* O157:H7 causing Plaintiff's illness and injuries described above, the product was defective.

26. Plaintiff was unaware of the defect in the product that the Defendants manufactured, supplied, packaged, distributed, and/or sold, and she relied upon the Defendants' implied warranties of merchantability and of suitability for human consumption. The Defendants breached those warranties by selling a product that was contaminated with *E. coli* O157:H7.

27. The product that the Defendants sold, and Plaintiff consumed, caused Plaintiff's illness and injuries described above, was defective and unreasonably dangerous at the time it left the Defendants' control because it contained *E. coli* O157:H7 and was, as a

result, dangerous beyond the reasonable expectations of the ordinary consumer, including the Plaintiff.

28. The defect in the product sold by the Defendants proximately caused Plaintiff's injuries, both personal and economic.

### V. NEGLIGENCE CLAIM AGAINST DEFENDANTS

29. Plaintiff incorporates paragraphs 1 through 28 of this Complaint as if each paragraph was set forth herein in its entirety.

30. The Defendants are in the business of manufacturing, supplying, packaging, distributing, and selling food products for human consumption.

31. The Defendants owed the ultimate consumers of their products that they sold a duty to take reasonable measures for their protection and safety.

32. The Defendants breached the duty it owed to persons who were the ultimate consumers of its product by committing the following acts and omissions of negligence:

  a. The Defendants failed to adequately monitor the safety and sanitary conditions of their premises;

  b. The Defendants failed to apply their own policies and procedures to ensure the safety and sanitary conditions of their premises;

  c. The Defendants failed to take reasonable measures aimed at preventing the transmission of *E. coli* O157:H7 and related filth and adulteration from their premises, equipment, and employees to their food products, including the product that Plaintiff purchased and consumed;

  d. The Defendants failed to properly train their employees and agents how to prevent the adulteration of their food products with *E. coli* O157:H7;

  e. The Defendants failed to properly supervise its employees and agents to prevent the adulteration of their food products with *E. coli* O157:H7;

33. Plaintiff's illness and associated legal injuries occurred as a direct and proximate result of the acts and omissions of negligence discussed above.

## VI. DAMAGES

34. Plaintiff incorporates paragraphs 1 through 33 of this Complaint as if each paragraph was set forth here in its entirety.

35. Plaintiff has suffered general and special, incidental and consequential damages, in an amount yet to be determined, as the direct and proximate result of the acts and omissions of the Defendants, which damages shall be fully proven at the time of trial. These damages include, without limitation, damages for loss of enjoyment of life; medical and medical-related expenses, wage claims and other economic loss; emotional distress; pharmaceutical expenses; and other ordinary, incidental and consequential damages as would be generally anticipated to arise under the circumstances.

## PRAYER FOR RELIEF

WHEREFORE, the plaintiff prays:

(1) That the court award Plaintiff judgment against the Defendants in such sums as shall be determined to fully and fairly compensate Plaintiff for all general, special, incidental and consequential damages incurred, or to be incurred, by Plaintiff as the direct and proximate result of the acts and omissions of the Defendants;

(2) That the court award Plaintiff costs, disbursements, and reasonable attorneys' fees incurred herein;

COMPLAINT FOR PERSONAL INJURIES
and JURY DEMAND - 8

(3) That the court allow Plaintiff the opportunity to amend or modify the provisions of this complaint, as necessary or appropriate, after additional or further discovery is completed in this matter, and after all appropriate parties have been served; and

(4) That the court award such other and further equitable relief as it deems necessary and proper in the circumstances.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby requests that the above and foregoing cause of action be set for trial by jury.

Dated this 25th day of October 2024.

SARAH JOHNSON, Plaintiff

/s/Jason G. Ausman
Jason G. Ausman, Esq. #2261
AUSMAN LAW FIRM PC, LLO
9850 Nicholas Street, Suite 305
Omaha, NE 68114
Phone: 402.391.2400
Fax: 402.391.0343
jason@ausmanlawfirm.com

and

William D. Marler (*pro hac vice* pending)
MARLER CLARK, LLP, PS
180 Olympic Drive SE
Bainbridge Island, WA 98110
Phone: 206.346.1888
Fax: 206.346.1898
bmarler@marlerclark.com

*Attorneys for Plaintiff*